**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Disciplinary Counsel v. Hawkins*, **Slip Opinion No. 2020-Ohio-4023.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4023

DISCIPLINARY COUNSEL *v*. HAWKINS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Hawkins*, Slip Opinion No. 2020-Ohio-4023.]**

*Judges—Misconduct—Violations of the Code of Judicial Conduct—Public reprimand.*

(No. 2020-0468—Submitted May 13, 2020—Decided August 12, 2020.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2019-043.

_____

**Per Curiam.**

{¶ 1} Respondent, Judge Monica Elaine Hawkins, of Columbus, Ohio, Attorney Registration No. 0072826, was admitted to the practice of law in Ohio in 2000. She began serving her first term as an elected judge of the Franklin County Court of Common Pleas, Division of Domestic Relations and Juvenile Branch, on January 2, 2019.

**{¶ 2}** In an August 2019 complaint, relator, disciplinary counsel, alleged that Hawkins violated two rules governing the ethical conduct of Ohio judges by operating a vehicle while under the influence of alcohol ("OVI") in January 2019. The parties submitted comprehensive stipulations. Hawkins and two character witnesses testified at a hearing before a three-member panel of the Board of Professional Conduct. The panel issued a report finding that Hawkins had engaged in the charged misconduct and recommending that she be publicly reprimanded for her offenses. The board adopted the panel's findings and recommendation.

**{¶ 3}** We adopt the board's findings and publicly reprimand Hawkins for her misconduct.

### Stipulated Facts and Misconduct

**{¶ 4}** On January 31, 2019, at approximately 8:30 p.m., a motorist in Pickerington called 9-1-1 to report a suspected intoxicated driver. Shortly thereafter, a Pickerington police officer responded to the call and proceeded to stop Hawkins's vehicle after it turned into a parking lot.

**{¶ 5}** The officer approached Hawkins's vehicle and asked, "What's going on, ma'am?" Hawkins replied, "I'm trying to figure out how to get home" and explained that she had gotten lost. The officer immediately noticed the smell of alcohol emanating from Hawkins's vehicle and asked Hawkins whether she had consumed any alcoholic beverages. Hawkins replied, "No." The officer then stated, "Because I can smell the odor of alcohol coming from the vehicle." Although the officer had not asked for her identification or occupation, Hawkins replied, "No. I'm a judge and I was trying to get home but I just got lost." And when the officer asked where she was coming from, Hawkins stated that she had been at a restaurant in downtown Columbus, though she could not recall the name of the restaurant, and denied having consumed any alcohol.

**{¶ 6}** The officer noticed that Hawkins had a large knot on her forehead that appeared to be bleeding. When the officer asked about the head injury, Hawkins replied, "I don't have a head injury." The officer indicated that she could see the injury, and Hawkins interrupted her, stating, "Yeah, I know but it was nothing from today." In response to the officer's request for her identification and proof of insurance, Hawkins provided her driver's license and health-insurance card. When the officer drew Hawkins's attention to cuts and scrapes on her hands and what appeared to be vomit on her coat, Hawkins stated, "There's no domestic violence. I promise you." The officer also observed a large amount of vomit on the driver's-side floor of the vehicle.

**{¶ 7}** Moments later, a police sergeant arrived at the scene and approached the vehicle. Hawkins handed the sergeant her cell phone and told him that her bailiff was on the phone. The sergeant spoke briefly with the bailiff, who was inquiring about what had transpired and attempting to ascertain Hawkins's location so that she could go to the scene. Hawkins was then removed from the vehicle and asked to perform several field sobriety tests. After she failed all but one of those tests, the officer arrested her for OVI.

**{¶ 8}** At the police station, the officer read Hawkins her *Miranda* rights, *see Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), but Hawkins refused to sign an acknowledgment form. She also refused to provide a breath sample; consequently, the officer informed her that the police would seek a warrant to draw her blood. Hawkins was transported to the hospital to obtain a blood sample, but she refused to submit to a blood draw—even after being informed that the police had obtained a warrant and that she could not refuse. Eventually, four hospital security officers held Hawkins down until her blood could be drawn. She was charged with OVI under two statutory provisions and with a marked-lane violation.

{¶ 9} On February 14, 2019, Hawkins appeared with counsel for her arraignment in the Fairfield County Municipal Court and pleaded guilty to a single first-degree-misdemeanor count of OVI, *see* R.C. 4511.19(A)(1)(a). The court accepted her plea, dismissed the remaining charges, and sentenced her to 90 days in jail with 87 days suspended and with the opportunity to complete a 72-hour driver-intervention program in lieu of three days in jail. In addition, the court imposed a $375 fine, suspended Hawkins's driver's license for one year, and ordered her to serve one year of nonreporting probation. After Hawkins was sentenced, the state received the results of her blood sample, which showed that on the night of her arrest, she had a blood-alcohol content of 0.199 grams by weight of alcohol per 100 milliliters of whole blood.

{¶ 10} On these facts, the board found that Hawkins violated Jud.Cond.R. 1.1 (requiring a judge to comply with the law) and 1.2 (requiring a judge to act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary and to avoid impropriety and the appearance of impropriety).

### Stipulated Sanction

{¶ 11} When imposing sanctions for attorney misconduct, we consider all relevant factors, including the ethical duties that the lawyer violated, the aggravating and mitigating factors listed in Gov.Bar R. V(13), and the sanctions imposed in similar cases.

{¶ 12} No aggravating factors are present in this case. *See* Gov.Bar R. V(13)(B). As for mitigating factors, the parties stipulated and the board found that Hawkins does not have a history of prior discipline and that she had made full and free disclosure to the board, exhibited a cooperative attitude toward the disciplinary proceedings, and had other sanctions imposed for her conduct. *See* Gov.Bar R. V(13)(C)(1), (4), and (6). In addition, the board found that Hawkins had submitted evidence of her good character and reputation by way of testimony

from her bailiff and Franklin County Court of Common Pleas Judge Dana S. Preisse.  *See* Gov.Bar R. V(13)(C)(5).

{¶ 13} The board also noted that Hawkins had submitted a report from the Ohio Lawyers Assistance Program ("OLAP") indicating that she has no diagnosed substance-use or mental-health disorder and recommending several ways in which Hawkins could address the stress and isolation associated with her new role as a judge.  At her disciplinary hearing, Hawkins testified that she was following OLAP's recommendations, had completed an independent mental-health and drug-and-alcohol assessment through a private counseling agency, and had participated in counseling with her pastor and her spiritual adviser for the past year.  She stated that she had not consumed alcohol since the night of her OVI, that she had complied with her criminal sentence, and that at the time of her disciplinary hearing, she had approximately four weeks left on her term of probation.  The panel found her testimony to be credible.

{¶ 14} In accord with the parties' stipulated sanction, the board recommends that we publicly reprimand Hawkins for her misconduct.

{¶ 15} Operating a vehicle while intoxicated imperils public safety and public confidence in the integrity of the judiciary.  We have publicly reprimanded sitting jurists for driving while under the influence of alcohol.  *See, e.g.*, *Disciplinary Counsel v. Marshall*, 143 Ohio St.3d 62, 2015-Ohio-1187, 34 N.E.3d 110; *In re Complaint Against Resnick*, 108 Ohio St.3d 160, 2005-Ohio-6800, 842 N.E.2d 31.  We have imposed that sanction even when the jurists had abused the prestige of the office by repeatedly invoking their status as a judge during their OVI arrests.  *See, e.g.*, *Disciplinary Counsel v. Gonzalez*, __ Ohio St.3d __, 2020-Ohio-3259, __ N.E.3d __; *Disciplinary Counsel v. Doherty*, __ Ohio St.3d __, 2020-Ohio-1422, __ N.E.3d ___; *Disciplinary Counsel v. Williams*, 152 Ohio St.3d 57, 2017-Ohio-9100, 92 N.E.3d 859.

{¶ 16} After independently reviewing the record and relevant precedent, we agree that a public reprimand is the appropriate sanction in this case.

**Conclusion**

{¶ 17} Accordingly, Monica Elaine Hawkins is publicly reprimanded for the misconduct described above. Costs are taxed to Hawkins.

Judgment accordingly.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Joseph M. Caligiuri, Disciplinary Counsel, and Stacy Solochek Beckman and Adam P. Bessler, Assistant Disciplinary Counsel, for relator.

Bradley Frick & Associates, L.L.C., and Bradley N. Frick, for respondent.

_____